# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| TINA MICHELLE FREEMAN, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:13-CV-01034-DGK-SSA |
| CAROLYN W. COLVIN, Commissioner of Social Security, | ) |
| Defendant. | ) |

## ORDER AFFIRMING COMMISSIONER'S DECISION

This action seeks judicial review of the Commissioner of Social Security's ("the Commissioner") decision denying Plaintiff Tina Freeman's applications for Social Security benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–434, and Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The Administrative Law Judge ("ALJ") found Plaintiff had several impairments, but no *severe* impairments, thus she was not disabled under the Act.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed her applications on August 8, 2009, alleging a disability onset date of May 23, 2009. The Commissioner denied the applications at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held two hearings, and on September 13, 2012, issued a

decision finding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on September 10, 2013, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## Standard of Review

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue,* 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g); 416.920(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

2

available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner,* 646 F.3d at 556.

**Discussion**

Plaintiff argues the ALJ erred by: (1) failing to find she suffered from a severe impairment; (2) failing to order additional personality testing to clarify whether she suffered from a somatoform disorder; and (3) failing to give more weight to her treating physician's opinion. The Court finds no merit to these claims.

At the outset, the Court notes the ALJ's decision rests in large part on his credibility determination, which Plaintiff does not challenge. The ALJ found Plaintiff's allegations were not credible for a variety of reasons, including: (1) the lack of objective medical evidence supporting her claims; (2) her sporadic work history; (3) the fact that she exaggerated her symptoms;[2] and (4) the fact that at different times she displayed drug seeking behavior. R. at 14, 16, 18, 185, 221, 457, 609-11. With that in mind, the Court turns to Plaintiff's specific arguments.

**A.   The ALJ did not err in finding Plaintiff had no severe impairments.**

At step two in this case, the ALJ found Plaintiff had impairments of chronic obstructive pulmonary disease ("COPD"), mild degenerative disc disease of the cervical spine, and a mood disorder,[3] but no severe impairments. A medically determinable impairment is "severe" if it more than minimally affects the claimant's ability to perform basic work activities. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). The impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable

---

[2] Dr. Charles Mauldin, M.D., an examining physician, diplomatically described Plaintiff as possessing an "excessive willingness to report pain with examination maneuvers." R. at 610.

[3] The heading of section 3 of the decision also lists "fibromyalgia" as a medically determinable impairment. R. at 13. This is a typographical error. The subsequent discussion in the body of this section makes clear that fibromyalgia was not a medically determinable impairment. R. at 14.

3

clinical and laboratory diagnostic techniques . . . and must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms . . ." *Martise v. Astrue,* 641 F.3d 909, 923 (8th Cir. 2011).  The claimant bears the burden of establishing that his impairment is severe.  *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  Although severity is not an onerous requirement, it is also not a toothless standard.  *Id.* at 708.

The Court holds the ALJ did not err here because there was no credible evidence on the record that Plaintiff's impairments were "severe."  Tellingly, while Plaintiff spends four pages of her brief arguing that the ALJ erred at step two, she does not identify a single impairment, or combination of impairments, that constitutes a "severe" impairment.  Nor could she.  The record does not support such a finding.  The ALJ spent six pages of his decision carefully discussing the evidence and weighing the relevant factors to determine whether Plaintiff's ability to perform basic work-related activities for twelve consecutive months was significantly limited.  R. at 14-20.  He rightly found Plaintiff's ability was not significantly limited, and he gave good reasons for his decision.  Consequently, there is no error.

**B.      The ALJ did not err by failing to develop the record further.**

Plaintiff also alleges that the ALJ committed reversible error by failing to fully and fairly develop the record.  Plaintiff contends the ALJ should have ordered additional personality testing to clarify whether Plaintiff possibly suffered from a somatoform disorder.[4]

Again, it is Plaintiff's burden to prove that she suffers from a severe impairment, not the Commissioner's.  *Kirby*, 500 F.3d at 707.  The ALJ has a duty to develop the record only when a crucial issue is undeveloped and the evidence is insufficient to allow the ALJ to form an opinion.

---

[4] "Somatoform disorder is a mental impairment whereby an individual experiences '[p]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms.'"  *Hageman v. Colvin*, No. 2:13-cv-79-NCC, 2014 WL 4912564, at *15 (E.D. Mo. Sept. 30, 2014) (quoting 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.07).

*Martise*, 641 F.3d at 926-27.  Here, the ALJ possessed sufficient information to determine whether Plaintiff suffered from a somatoform disorder.  The ALJ observed that Dr. Robert Forsyth, Ph.D., examined Plaintiff and noted that while she showed some indications of a somatoform disorder, she did not meet the full diagnostic criteria.  R. at 14, 662.  The ALJ also discussed Plaintiff's request for additional testing, finding additional testing was unnecessary because Dr. Forsyth had already examined her twice and did not diagnosis somatoform disorder either time.  R. at 14, 643, 662.  The record also shows that during a separate examination at the Infectious Diseases Clinic, another healthcare provider considered a somatoform diagnosis and determined Plaintiff did not meet the criteria for it.  R. at 14, 447.  Given these facts, the Court cannot say that this issue was underdeveloped or that the evidence was insufficient.  *See Martise*, 641 F.3d at 926-27.  Therefore, the ALJ did not err in declining to order additional testing.

C.      **The ALJ did not err in weighing the opinion of Plaintiff's treating physician.**

Finally, Plaintiff contends the ALJ erred in weighing the opinion of her treating physician, Dr. Alice Laule, M.D.  Plaintiff argues the ALJ failed to give Dr. Laule's opinion appropriate weight, and that the ALJ's weighing of her opinion is not supported by the record as a whole.  In the alternative, Plaintiff contends the ALJ should have re-contacted Dr. Laule for further clarification regarding the objective medical basis for the doctor's opinions as to her residual functional capacity.

Where the record contains differing medical opinions, it is the ALJ's responsibility to resolve conflicts among them.  *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008).  The ALJ must assign controlling weight to a treating physician's opinion if that opinion is well-supported and consistent with other evidence in the record.  20 C.F.R § 404.1527(c)(2).  "[A]n ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence."  *Martise*, 641 F.3d at 925.  If an

5

ALJ discounts a treating physician's opinion, he must give "good reasons" for doing so. *Dolph v. Barnhart*, 308 F.3d 876, 878-79 (8th Cir. 2002).

Although the last time Dr. Laule personally examined Plaintiff was in July of 2009, on December 1, 2009, Dr. Laule wrote a brief letter on Plaintiff's behalf stating that she was "quite debilitated by her symptoms and is unable to work." R. at 522. Additionally, almost two years later, on June 8, 2011, Dr. Laule completed a Medical Source Statement form opining that Plaintiff faced severe limitations on her ability to work. Among other things, it alleged Plaintiff could stand or walk less than two hours a day; she could sit less than two hours a day; and she could never climb stairs. R. at 607-08.

The ALJ gave three reasons for discounting Dr. Laule's opinions, all of which are supported by the record. First, Dr. Laule's own notes indicate that after her initial consultation, her contact with the Plaintiff was mostly limited to telephone calls. R. at 19, 528. As a result, her opinions relied heavily on Plaintiff's subjective complaints which the ALJ had previously determined were not credible. R. at 15-16, 19. Second, Dr. Paul Boyce, M.D., the non-examining medical consultant who testified at Plaintiff's hearing, seriously questioned Dr. Laule's treatment approach and methods which appeared to be a regimen of homeopathic treatment and herbs.[5] R. at 19, 76, 79. Third, Dr. Laule's opinion was inconsistent with the other medical evidence of record with showed Plaintiff did not suffer from any severe impairments. R. at 16, 19, 74-77, 457, 534, 611, 614.

Assuming for the sake of argument that Dr. Laule's relationship with Plaintiff is sufficiently close that she should be considered a treating physician—an open question since Dr. Laule examined Plaintiff so infrequently—the caselaw supports the ALJ's decision. An ALJ

---

[5] Dr. Boyce testified, "you know, I'm concerned that this physician was doing – almost all her notes were phone calls, without really direct observation of the patient on any regular basis . . . that's not really appropriate medical treatment. I don't usually make those comments in testimony, but I do here." R. at 79.

6

may give less weight to a doctor's assessment that is based on the claimant's own less-than-credible reports.  *See Finch*, 547 F.3d at 937 ("Given that the ALJ found Finch's subjective reports of pain not entirely credible, a residual functional capacity assessment based on those reports was appropriately not given substantial weight.")  Also, "[i]t is well established that an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained in the record."  *Prosch v. Apfel*, 201 F.3d 1010, 1013-14 (8th Cir. 2000).  Here, the reports from the various examining physicians finding very little wrong with Plaintiff, combined with Dr. Boyce's critique of Dr. Laule's treatment, provide substantial evidence supporting the ALJ's decision to discount her opinion.  The ALJ also articulated these reasons in his decision.  Consequently, the ALJ did not err in weighing Dr. Laule's opinion, nor was there any need to contact her to clarify her opinion.

## Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:     April 8, 2015                              /s/ Greg Kays
                                                    GREG KAYS, CHIEF JUDGE
                                                    UNITED STATES DISTRICT COURT